IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS

| | |
|---|---|
| **DOROTHY WARD** ) | |
| ) | |
| Plaintiff, ) | CIVIL ACTION NO:1:25-CV-01038-SOH |
| ) | |
| v. ) | |
| ) | |
| **ACCUDATA CREDIT SYSTEMS,** ) | |
| **LLC** ) | |
| ) | |
| **Defendant.** ) | |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF HER RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS**

Plaintiff, by and through his counsel, hereby submits this Memorandum of Law in Support of her response in opposition of Defendant AccuData Credit Systems, LLC ("AccuData")'s Motion To Dismiss (ECF No. 11-12).

## I.     INTRODUCTION

Defendant AccuData seeks dismissal of this case by arguing that Plaintiff must have fully developed evidence to support the allegations of her complaint. AccuData avers that Plaintiff's complaint must be dismissed unless Plaintiff has specific evidence related to AccuData's vendors and AccuData's policies and procedures. This evidence is solely in the possession control and custody of AccuData and will not be fully known to Plaintiff until the discovery is complete. The Fair Credit Reporting Act ("FCRA"), imposes duties on AccuData to provide accurate information in its background reports. AccuData's inclusion of criminal background information for an individual with the same first and last name as Plaintiff runs afoul of AccuData's obligation to

assure the maximum possible accuracy of the information it reports, an obligation that cannot be evaded by Defendant's argument. Plaintiff has alleged facts sufficient to state a claim under the FCRA, and, at minimum, raises factual issues as to AccuData's liability. Finally, Plaintiff's counsel was admitted to practice in the Western District of Arkansas on May 15, 2025, the day before the Complaint in this matter was filed.

## II. FACTS

Plaintiff applied for applied for housing at the Magnolia Housing Authority in or around November 2024. ECF No. 13, ¶ 6. When Plaintiff applied for the opening, she consented to a background report, which Magnolia Gardens purchased from AccuData. *Id.* at ¶¶ 7-8. AccuData returned to Magnolia Gardens a report that contained several convictions that do not actually belong to Plaintiff. *Id.* at ¶¶ 8, 10-13. These include two felony convictions for drug possession in 2009, a felony conviction for drug possession from 1999 and a misdemeanor conviction for attempted possession from 1997. The report also contains convictions from Kankakee County, IL for felony retail theft in 2007 and misdemeanor retail theft in 2017. *Id.* at ¶ 12. In short, AccuData's report portrayed Plaintiff as having a substantial criminal background. *Id.* at ¶ 14.

However, AccuData had inaccurately reported the criminal history of another consumer as belonging to Plaintiff. *Id.* at ¶ 13. This other consumer has a different middle name and a different address from Plaintiff, and both discrepancies can be determined by reviewing the public record. *Id.* at ¶ 15. Because of Accudata's report, Plaintiff's move in date for her housing was delayed by a period of multiple weeks. *Id.* at ¶ 17.

### III.    ARGUMENT

#### A. Standard of Review

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint need only state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In the Fourth Circuit, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Industries, Inc.*, 637 F.3d 435, 440 (4th Cir. 2011). Further, a court should only grant a motion to dismiss if, after accepting the factual allegations as true and drawing all reasonable inferences from those facts in favor of the plaintiff, "it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999).

#### B. AccuData's Motion Is Premature

Whether a consumer report prepared by a consumer reporting agency is inaccurate, whether AccuData followed reasonable procedures, and the damage caused by the report are all triable issues of fact inappropriate for determination at the motion to dismiss stage. *See Dalton v. Capital Associated Indus.*, 257 F.3d 409, 416 (4th Cir. 2001) (how a "reasonable jury could read the report" and reasonableness of procedures to maintain accuracy were factual issues). AccuData's reliance on *Rydholm v. Equifax Information Services LLC*, 44 F.4th 1105 (11th Cir. 2022) does nothing to overcome the prematurity of its Motion. Plaintiff has alleged that AccuData's consumer report was inaccurate and that AccuData's matching criteria used in preparing Plaintiff's report fell below the standards required by the Fair Credit Reporting Act ("FCRA"). Further, plaintiff has alleged that the name used to match Plaintiff to the inaccurate criminal record – "Williams" – is a very common last name and that heightened matching criteria are required when matching common

3

names. Plaintiff, at this point, has not had the opportunity to take discovery on whether AccuData used a vendor to help prepare her report or the reliability of any such vendor. Plaintiff's complaint makes sufficient allegations to put Defendant on notice of Plaintiff's claims and allows Defendant to prepare its defense. Therefore, Plaintiff's complaint should not be dismissed.

Further, the FCRA was enacted in order to ensure that "consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information." 15 U.S.C. § 1681(b). The FCRA was prompted by "congressional concern over abuses in the credit reporting industry." *Guimond v. Trans Union Credit Information Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995); *see also St. Paul Guardian Ins. Co. v. Johnson*, 884 F.2d 881, 883 (5th Cir.1989). In the FCRA, Congress has recognized the crucial role that consumer reporting agencies play in collecting and transmitting consumer credit information, and the detrimental effects inaccurate information can visit upon both the individual consumer and the nation's economy as a whole. *See* 15 U.S.C. § 1681(a)(1), (3). It is undeniably a remedial statute that must be read in a liberal manner in order to effectuate the congressional intent underlying it. *See Cortez v. Trans Union, LLC*, 617 F.3d 688, 722 (3d Cir. 2010).

Defendant is a Consumer Reporting Agency "CRA" and its conduct is regulated by the FCRA. 15 U.S.C. § 1681a(f). When it prepares consumer reports, Defendant is required to comply with 15 U.S.C. § 1681e(b), which states,

> Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates.

4

The reasonableness of a CRA's procedures is not a matter that can be decided as a matter of law. *Cortez*, 617 F.3d at 709 (same); *see also Guimond,* 45 F.3d at 1333 ("The reasonableness of the procedures and whether the agency followed them will be jury questions in the overwhelming majority of cases."); *Cahlin v. Gen. Motors Acceptance Corp.,* 936 F.2d 1151, 1156 (11th Cir. 1991) (same). "Reasonable procedures are those that a reasonably prudent person would undertake under the circumstances. Judging the reasonableness of a credit reporting agency's procedures involves weighing the potential harm from inaccuracy against the burden of safeguarding against such inaccuracy." *Philbin v. Trans Union Corp.*, 101 F.3d 957, 963 (3d Cir.1996) (alterations, quotations, and citations omitted). It is important to note that § 1681e(b) erects a standard of "maximum possible accuracy." That requires more than merely allowing for the possibility of accuracy. *Cortez,* 617 F.3d at 709. Moreover, the distinction between "accuracy" and "maximum possible accuracy" is not nearly as subtle as may at first appear, it is in fact quite dramatic. *Cortez v. Trans Union, LLC*, 617 F.3d 688, 709 (3d Cir. 2010). The reasonableness of a CRA's procedures is left to a jury because when assessing reasonableness, the factfinder must balance "the potential harm from inaccuracy against the burden of safeguarding against such inaccuracy." *Seamans v. Temple Univ.*, 744 F.3d 853, 865 (3d Cir. 2014).

**B. AccuData's Argument that it can Blindly Rely on a Vendor is not "Reasonable Procedures to Assure the Maximum Possible Accuracy"**

AccuData makes much of the argument that it can rely on the data that it receives from its sources. However, the blind reliance on third-party data vendors with no additional procedures to assure the accuracy of the information provided by the vendor, has long been considered a negligent and willful violation of the FCRA—especially when the inaccurate record is a public record, and can be accessed by simply contacting the relevant court. The Court in the District of

Idaho recently held that there were sufficient facts for a plaintiff to seek punitive damages for willful noncompliance with the FCRA, where a CRA blindly relied on the big three National CRAs (Trans Union, Experian, and Equifax) ("NCRA") to pass along public record information. *Rogue v. Corelogic Credco, LLC*, 2020 WL 7061745, at *4 (D. Idaho Dec. 2, 2020) (citing *Perez v. Trans Union, LLC*, 526 F. Supp. 2d 504, 509 (E.D. Pa. 2007) (finding that even though the defendant obtained its information from the credit bureaus there remained a question of fact as to whether it followed reasonable procedures to ensure the accuracy of its reports pursuant to § 1681e(b)), abrogated on other grounds by *Cortez v. Trans Union, LLC*, 617 F.3d 688 (3d Cir. 2010); *Starkey v. Experian Information Solutions, Inc.*, 32 F. Supp. 3d 1105, 1109-11 (C.D. Cal. 2014) (rejecting the CRA's argument that its report was "accurate" because it "fully and accurately included all of the information [the NCRAs] provided"; and holding that a reseller, like other consumer reporting agencies, must employ reasonable procedures to assure the maximum possible accuracy of the information in its report); *Dirosa v. Equifax Information Servs, LLC*, 2014 WL 3809202, at * 3 (C.D. Cal. 2014) (rejecting the CRA's argument that it was not liable under § 1681e(b) because it "fully and accurately included all of the information [the NCRAs] provided); *Ocasio v. Corelogic Credco, LLC*, 2015 WL 5722828, at *3-*4 (D. N.J. 2015) (rejecting the CRA's argument that its procedures were reasonable as a matter of law under § 1681e(b) "because it accurately compiled and reported information collected from the credit bureaus"); *Willoughby v. Equifax Information Svs., LLC,* 2013 WL 8351203, at *2-*3 (N.D. Ala. 2013) (finding that resellers are subject the same requirements under § 1681e(b) as other consumer reporting agencies to follow reasonable procedures to ensure the accuracy of its reports); *Waterman v. Experian Information Solutions, Inc.*, 2013 WL 675764, at *2-*3 (C.D. Cal. 2013) (same); *Dively v. Trans Union, LLC*, 2012 WL 246095, at *3-*4 (E.D. Penn. 2012) (same). The First Circuit also recently cautioned CRAs with

respect to blind reliance on third-party data vendors. *McIntyre v. RentGrow, Inc.,* 34 F.4th 87, 99 (1st Cir. 2022).

At this stage of the litigation, Plaintiff only knows that AccuData prepared an inaccurate report about her. AccuData has not identified its source for the inaccurate information that was contained in Ms. Ward's consumer report, nor has it provided any evidence to support its argument that any such source was reliable. Plaintiff has alleged sufficient facts for AccuData to prepare its defense. This is clearly shown by the fact that AccuData has already raised the argument that it can rely on its source for the inaccurate information. Therefore, Plaintiff's Complaint should not be dismissed.

### C. Plaintiff Has Sufficiently Alleged that AccuData Failed to Employ Reasonable Procedures to Assure Maximum Accuracy

Plaintiff's Complaint sets out that Defendant mismatched Plaintiff's information with that of another individual who had a similar name as Plaintiff. In this particular case the name matched was also a very common name. Critically, here, matching procedures which require only a name match are a violation of FCRA section 1681e(b). *See Ramirez v. Trans Union, LLC,* No. 2017 WL 5153280, at *4 (N.D. Cal. Nov. 7, 2017), *aff'd in part, vacated in part, rev'd in part sub nom. Ramirez v. TransUnion LLC,* 951 F.3d 1008 (9th Cir. 2020), *rev'd and remanded,* 141 S. Ct. 2190, 210 L. Ed. 2d 568 (2021) (reversed and remanded on other grounds); *see Ramirez* Dkt. No. 305 (jury verdict finding that matching public records to individuals using an exact first and last name match was a willful violation of the FCRA). *See also* Consumer Financial Protection Bureau, *Fair Credit Reporting; Name-Only Matching Procedures*, 86 Fed. Reg. 62,468 (Nov. 10, 2021) (stating that the practice of using only a consumer's first and last names in running a consumer report is "far from sufficient" to meet the requirement to use "reasonable procedures to assure maximum

possible accuracy" under the FCRA, and that "multiple additional elements beyond names may often be required.") Further, CRAs must adhere to a heightened standards when preparing reports on individuals with common names, as failure to do so is a willful violation of the FCRA. *See Williams v. First Advantage LNS Screening Sols. Inc*, 947 F.3d 735, 745 (11th Cir. 2020) (upholding a jury award of $1,000,000 where a CRA failed to follow procedures that took into account the commonality of a name); *Smith v. LexisNexis Screening Sols., Inc*., 837 F.3d 604, 610 (6th Cir. 2016) (noting the commonality of the name "Smith" and upholding a $75,000 compensatory damage award based on $2,640 in wage loss that resulted from a delayed start date of a job caused by an inaccurate background check).

The stakes become even more significant in the context of criminal records: "The inaccurate attribution of criminal records constitutes sufficient evidence to permit the question of 'reasonable procedures' to go to a jury." *Henderson v. Corelogic Nat'l Background Data, LLC*, 178 F. Supp. 3d 320, 336 (E.D. Va. 2016) (cataloguing cases holding same). Defendant's inclusion of a disclaimer in the report does not change this fact. *Id*.

The Sixth Circuit's decision in *Smith v. LexisNexis* is also instructive on this point. There, the CRA issued a report for a consumer named David Alan Smith that included a fraud conviction for a man with the same first name, last name, and date of birth, but a different middle name – David *Oscar* Smith. *Smith*, 837 F.3d at 606-07 (6th Cir. 2016). The Sixth Circuit found a jury could conclude that a "reasonably prudent CRA" could have used the consumer's middle initial to cross-reference and exclude the criminal information. *Id*. 606-610. *See also Adams v. Nat'l Eng'g Serv. Corp.*, 620 F. Supp. 2d 319, 324, 330-33 (D. Conn. 2009) (jury could find a failure to follow reasonable procedures where report linked plaintiff to convictions occurring in a different state and attributed to a person with the same last name and date of birth, but different first name

("Debra" instead of "Deborah"), and where CRA furnished the report to a potential employer without further investigation); *Henderson v. Corelogic Nat'l Background Data, LLC*, 178 F. Supp. 3d 320, 336 (E.D. Va. 2016) (involving different FCRA provision, but citing decisions holding the "inaccurate attribution of criminal records constitutes sufficient evidence to permit the question of 'reasonable procedures' [under § 1681e(b)] to go to a jury, even where, as here, the defendant attempted to avoid liability by pointing to a disclaimer or other contractual delegation of responsibility.").

Here, as pled in Plaintiff's Amended Complaint, when Defendant prepared its report on Plaintiff, it apparently ignored the matching discrepancies and did not undertake any heightened matching or cross-referencing given that the developed name being matched was a very common last name. By failing to do so, AccuData represented in its report about Plaintiff to Plaintiff's landlord that Plaintiff had multiple felony and misdemeanors convictions. ECF No. 13, ¶ 12. Thinking that Plaintiff was a career criminal, Plaintiff's landlord took adverse action against Plaintiff that resulted in Plaintiff being delayed in getting housing *Id.* at ¶ 17.

### D. Plaintiff's Counsel is Admitted to Practice in this District

Plaintiff's counsel applied for general admission to this district on May 13, 2025, and received notice that his admission was approved on the same day. On May 14, 2025, Plaintiff's counsel submitted payment for his admission. Plaintiff's counsel received his certificate of admission form the court dated May 15, 2025 (a copy of which is attached hereto). Plaintiff's original complaint was filed on May 16, 2025, not May 15, 2025, as alleged in Defendants Brief in Support of its Motion to Dismiss. Thus, Defendant's argument that Plaintiff's counsel is not admitted in this district is without merit.

## IV. CONCLUSION

Based on the foregoing, Defendant AccuData's motion to dismiss this case should be denied.

                                      Respectfully submitted,

BY:    */s/ Geoffrey Baskerville*
         GEOFFREY BASKERVILLE, Esquire
         **FRANCIS MAILMAN SOUMILAS, P.C**.
         1600 Market Street, Suite 2510
         Philadelphia, PA 19103
         (215) 735-8600
         gbaskerville@consumerlawfirm.com

         ***Attorneys for Plaintiff***

Dated: August 5, 2025



# United States District Court
## Western District of Arkansas



I, Ronald E. Dowling,

Clerk of the United States District Court,

for the Western District of Arkansas

do hereby certify that

## Geoffrey H. Baskerville

was duly admitted and qualified to practice as an Attorney

of said District Court on the __15th__ day of __May__ __2025__.

In testimony whereof, I sign my name and affix the seal of this Court, on the __15__ day of __May__, __2025__.

By __Ty Caldwell__, Deputy Clerk